Okay, would the lawyers who are going to argue the case please approach the bench and introduce yourself. James Bellagrata, Assistant State's Attorney on behalf of Scotia Hospital, Oakville County. Good morning, Your Honor. It's Michael Rassak on behalf of Mr. Manago. And you're going to reserve some time, appellate, for some formal questions. Your Honor, I'm interested in the procedure, whether I was to go first or... Well, I would think, you know, that you would go last, personally. I have no... Okay, so why don't you go first and you reserve some time for... And you could keep the same seats, it doesn't make a difference. Thank you. I would hold two minutes for my end then. Sorry for that. Neither one of us had exactly faced a specific position before. Good morning, Your Honors. My name is Michael Rassak. I'm here on behalf of the plaintiff and the petitioner in this matter, Mr. Manago. Obviously, the court is aware of the facts and the law and everything else because the court has an opinion. So I just want to try to encapsulate it if I can. The court's opinion was, the majority opinion was a very broad opinion. It basically said that a medical lien applies anywhere, anytime, to any recovery that an injured person can make, in this case or any other case. We argued against that in the brief that this court allowed us to file. And my understanding is that the county is not defending the court's broader opinion. I believe, at this point, the county's only argument is that Mr. Manago was a debtor and that because he was a debtor, that allowed the creation of a lien. And if I'm correct in defining their position, then the only question I think for this court is whether or not Mr. Manago was a debtor. And our point is really simple. He's not a debtor to Cook County Hospital, or rather he was not a debtor to Cook County Hospital at the time, because a minor can only be responsible for what they call necessaries. And even then, I think medical care would be a necessary, but even then, if I'm 12 years old, I'm only responsible to pay a medical bill if, in fact, the hospital gave me that care on my own credit. I'm not sure how they would do that, but it's possible. Counsel, I have a question. Based on the statute, the Health Care Service Lien Act, here the debtor is sort of synonymous with the injured person or the injured person as defined in the statute. Yes, sir. And then you suggest that the parent here is the injured person. I have a question with regards to under Section 10 of the Health Care Service Lien Act, a lien is conferred upon the health care providers that render any service, quote, in the treatment, care, or maintenance of an injured person. How does a parent alleging an economic injury fit into this concept of the injured person? I've listened to lawyers say that's a good question. Of course, if it wasn't a good question, we wouldn't be discussing it. The problem with that is that there's that language in the act, but there's the reality that the law has been that the minor is not responsible for his medical bills. So no matter what the Lien Act wants it to do, the bottom line is that the minor is not responsible for his bills, and the Family Expense Act makes the mother responsible for his bills. So in that sense, if we have to look at it, the mother, I guess, becomes the injured person. That's a stretch, and I understand that. But we've got the Family Expense Act that says only the mother can recover, and we've got the Lien Act which talks about an injured person. I suspect the real answer is that when somebody passed the Lien Act many, many years ago, nobody thought about adults and minors. I suspect it just wasn't in their mind. So are you suggesting to this court that we are to follow the case law that you've indicated that says that the injured person is the parent, and not to follow the statute which is part of this case? That is what I'm saying, but I think I'm saying it in a little different way. The bottom line is that the lien can only attach to a debt, and there is no debt here for the lien to attach to. I don't know what that does to the rest of the law, but the best language for that came out of the Kennedy v. Kiss case, and I don't know that I've ever quoted or actually read it. Before you go into that, let me just cover one little point with you, which you didn't cover in your brief, and nobody really did. I mean, if a statute says that they're going to take your property, and they have no right to do that, isn't that a violation of the Constitution? I thought that was the constitutional issue that I wrote. That was the due process argument that I made very briefly on it. Yes, very briefly. And I agree with that. I was looking more at the equal protection argument. I mean, isn't that act against public policy? I mean, if a minor has no obligation to pay his medical bills, and you're taking his pain and suffering, and you're taking his scar tissue and you're paying it, isn't that a violation of the federal Constitution, the Illinois Constitution, and anything that we've ever had? I think that dovetails in with my point that he wasn't a debtor because he was not a debtor. He didn't recover, and he could not recover these medical bills. So if we're going to make the minor, because he was a minor, pay the hospital, we're taking money from him that had nothing to do with the hospital's treatment. It's the same as if they reached into his bank account someplace and said we're going to take that money. In the Kennedy case, the court was very clear, and Kennedy is something that the other cases cited but didn't talk about much. They said, to quote them, since the payment of those expenses was to the benefit of the parents, they're talking about medical expenses, who are liable for the expenses rather than for the benefit of the child who was not. It's a clear statement in Kennedy following the common law that the child is not liable. And if Mr. McGregor – But in Kennedy, wasn't the child assigned by the parents the right – But the bottom line is, though, when the court made that simple statement, it said the child is not liable for the expenses. They weren't referring in that phrase, I don't think, to any arrangement that had been there. They were referring to the common law, because that paragraph – the paragraph in which that sentence is starts not with a discussion of subrogation or assignment, but it starts with the phrase, since the obligation to pay is on the parent, the cause of action to recover for the medical expenses lies in the parent, not in the child. And they go on to say it's not the child's – A minor child can't sue. That's the bottom line. That's where the constitutional argument comes back in. The child cannot recover from the tort feature. Mr. Monago cannot sue THA. Where's medical bills? I think this court's going to change about 100 years of law if it's going to do that. And that's what got the attention of people and surely brought my involvement. Let me ask you another question with regards to the case at the trial level. Yes, sir. Was the hospital's notice of lien introduced in April Pritchett's claim for medical expenses? Yeah, I'm trying to think how the paperwork went. The hospital served its lien on everybody in the case, and they would have had to have been aware of her claim because the circuit court judge said she had a count to recover the medical expenses. And as this court noted in its opinion, if you read the complaint, it wasn't there. But everybody at the trial level accepted the fact that there was a count for her medical expenses, and someplace in there there's actually a claim. Although there's not a separate count, I believe within the complaint there's a claim of her for those expenses. It's just not set out separately. I think there is a separate count. But somebody assumed that to be the case. Right. And that's awkward. I understand that. And I guess maybe this is a question for the State, but the notice of lien that was filed in this cause is directed to Plaintiff's Counsel, Mr. Montgomery's office, Mr. Montgomery, and then also to Akeem Manago. And it's not addressed to April Pritchett. So although the record is silent on this, it appears that the notice of lien was filed or noticed after her case was dismissed. Is that correct? You know, I'm sorry. I don't know the answer to that. I thought the lien came before the case went to trial.  And it wasn't so much that her case was dismissed. If that becomes relevant, the circuit court judge said she did not prove her right to recover those medical bills. So she wasn't dismissed. She's still there. If she wasn't, that would have saved a great deal of trouble for everybody. I have my own ideas. Part of the problem, I think, is we're talking about a very small sum of money relative to other things. And I think everybody just let the sort of – I hate to say it. I mean, I don't mean this in a dull way. They just didn't give it the attention they thought they would. And I don't think anybody saw that this would be the final result. So her part of the action, if it wasn't dismissed, was it stricken? The circuit court said she had a count to recover for the medical. And the circuit court judge denied recovery because she didn't prove her case. You said she didn't meet her prima facie case as to expectation of paying the bill. That's correct. And so he denied her recovery for the medical bills, which if that had occurred – So then is she still a party to this action? Technically, she is. The caption doesn't show it, but everybody has treated her as a party. That matter is not before us. That's – I thought – everybody treated her as a party because she's the one that sought the recovery because the circuit court judge said she had a count to recover, and everybody has assumed that to be true. And so I think that's a fact that we have to accept. I surely can't argue against it. I would have amended the pleadings if I had been the trial lawyer or the trial judge, but I wasn't. All right. Well, with regards to, again, going back to the lien, must all liens have a direct nexus to the rest, which here would be the recovery, to attach? That is our position. There has to be a causal connection between the lien and whatever created the lien. That's why I think the county has got the court before the horse. I think they're saying because there's a judgment that created a lien, and that's not how it works. What happens is that if you give medical care, you have a lien for the services that you performed, but that lien only attaches to the money that's recovered for the injury for which the doctor or hospital is treating you. If it's not so limited, then you run into real constitutional problems. If I can go recover from any account that Bob or Mary has anywhere, I don't think even the current version of the Act took that into account. And if I can go back to that, part of the problem here is the language in the Act. Anderson was looking at it. The language in the Act is against public policy. I think. Anderson is a case that the language that was there interpreting the Act was dicta. They said the plain language of the old Act was clear, and they should have just stopped right there. But then 20 years later, whatever it is, we redid the lien Act. But there's no evidence that when they redid this lien Act, they meant to change the common law in any way or the prior intent of the statute. All they were doing here was taking all of these medical liens, which were all over the board, each medical provider of a different type was having a one-third lien. If you recall the movie The Producers, there were 15 people with one-third of the lien. And so they just put them all in one spot. Now, when they did it, they changed some of the language, and nobody caught it. I think that's it. All right. Well, the manner of enrollment that was relied on by the State, that precedes the amendment of the statute. It does. So we can assume that the legislature was aware of enrollment when they enacted the amendment. Yet they didn't address it. And I think they should also, I think we can presume they were also aware of cases like Kennedy where it said the child was not a debtor. And if the State was looking at Anderson, I don't mean to demean legislative efforts or investigation when they're amending a statute, but they really rely upon an awful lot of input from the people who have interest in it. If they were looking at Anderson and somebody actually went to a legislator who said, well, what about Anderson? It looks like the minor can have his funds attached here. Somebody looking at Anderson should say, Anderson didn't have to say that. That wasn't binding law. That was dicta. So if you have it in dicta in Anderson and it's clear law in Kennedy, Kennedy is not dicta. They said the child is not a debtor. If I'm a legislator and you show me one case with dicta and one case with clear statement, I would think I would go with clear statement. That's about the best way I can answer that. I understand that it's somewhat muddled. I think it's muddled because the questions we're raising were never considered by anybody when they amended the statute. In fact, I'm talking to people, I'm almost positive of that. Another question regarding the legislative intent. What was the legislature's intent when they removed the phrase, based on the negligent or wrongful act from the act? That's the phrase that was back in the 1996 statute. That's the one Anderson talked about that was found. It said they didn't have to look at it. It wasn't so much that they went in and took four sentences and pulled one out, and that's what I was trying to indicate. What they did was redo the entire Leanne Act. They had all these acts. They redid them all and lumped them together and just redid almost all the language in them. There's all kinds of new language in there that wasn't there before. No one knows specifically why they dropped that out. I would argue if they were going to drop that out intentionally to change 50 or 100 years of common law, somebody would have said so, and if somebody had said so, there would have been an uproar in the legislature. Some, frankly, the lawyers group would have come in and said, what are you doing? I don't think anybody saw that coming. You can read into it what you will. I can't say you can't read that into it. It's impossible. And with regards to public policy, you raised that there's some public policy concerns. But on the other hand, if the hospital doesn't have a lien here, All right. What incentive is there for the indigent plaintiff or the minor plaintiff to zealously pursue a claim for medical expenses? There never really has been. Normally you pursue the claim for the incentive for pursuing the claim for medical expenses. It's typically a jury that finds out the fact. She said I was in the hospital for six months and have a $100,000 bill and I must have really been hurt. There is an incentive to always let the jury know what your medical care is. If the medical expenses aren't an issue, your medical care, a lot of it goes out the window. I think more importantly, this could have been handled differently by the county as well. If they had just gone in and said, Your Honors, we agree that if we lose, the plaintiff is entitled, she's entitled to those expenses, that would have ended the problem too. But for some reason they fought it at every level. It wouldn't have been difficult and it wouldn't have hurt the county here and that would have satisfied Your Honor's concerns. There would have been a lien. She would have recovered her medical bills and the county would have gotten a lien. If the county had just stepped forward and said, Okay, Your Honor, we understand, Your Honor, what you're doing, but we agree that those bills are valid. She doesn't have to show that she would have paid them. That's where the problem came from. I don't know why the judge held that. That didn't make sense to me, frankly. And the record is also silent on the motion to reconsider. The judge said it was just denied. Do we know the basis as to why the motion to reconsider was denied? I do not. I don't have an answer. That also is not before us. No. I hope not. Why don't you save some time for it? That's what I was hoping to do. Thank you very much. I appreciate your time. Let's hear from the judge. Good morning, Your Honor. James Belgradis once again. Mr. Belgradis, let me ask you this question. Does a minor have the ability to be charged for medical expenses? Minors under common law are not responsible for their medical expenses. Their parents are. So the minor alone, a 2-year-old, a 12-year-old, can't do that. Okay. And it won't make a difference if he becomes a majority at the time of his case, either, will it? Somebody who has reached the age of majority has the legal ability to pursue his or her own claims against the tortfeasor. If he has not reached that age of majority, he's got to rely on his or her parents to do it. But the determination as to when a lien attaches or not starts at the outset, correct? It's not when an individual reaches majority but when the individual is a minor. That is correct. You know, the Lien Act and its predecessor, the Hospital Lien Act, have been around for 75 years. And in all those 75 years, there has never been language in either of those statutes that talks about minors and the fact that the proceeds of a minor cannot be liened. And in all those 75 years, there has not been a single case that advances the position that the plaintiffs are advancing right now. In their reply brief, the- Yeah, but do you know of any case where money has been attached to a minor's verdict? Yes. For pain and suffering and things of that nature? Loss of normal life? I would say the Cooper case, which is a Supreme Court case, and the Enloe case. Well, that's not the same. Both personal injury cases. It didn't attach to those things in those cases. It attached to the personal injury recovery. To the settlement. To the settlement and or the trial judgment that was obtained by that minor. The NLE cites a case in its reply brief, Gaskell, and I agree with it to this extent. Gaskell says that it is not the province of courts to inject provisions not found in the statute. We don't have any provisions about minors in this statute. According to the statute, you become a debtor if you are injured, you are treated for your injuries at the hospital, you sue the tortfeasor for your injuries, and the bills are reasonable. In other words, not unreasonably high. Well, isn't that an assignment of a tort against public policy? I don't agree that it is outside of public policy. I believe that the cases that are-the line of cases that are cited by the Appalee and the Lean Act cases, they have two different purposes. The subrogation cases arise out of the concept of unjust enrichment, that it is unjust for a person to recover insurance proceeds and then sue the tortfeasor and get an additional pile of money. That is what those cases are founded on. The purpose of the Lean Act cases, the Lean Act itself, according to the Supreme Court in Cooper, the Lean Act promotes health care for the poor by lessening the financial burden on hospitals who would have to care for people who can't pay. Here's where I disagree with you. The first time we actually had in Illinois subrogation on medical expenses, and of course it hadn't even been in any other state either, was in the early 60s, around 1960, because I know I put it in the first insurance policy. And at that point in time, the lower court held that that was void as against public policy, even though the language said it applied only to medical expenses. And the argument by the state's attorney at that point in time was that it was an assignment of a tort and against public policy. Of course, the position now is different. But the question is, you know, the concept of an assignment of a tort is against public policy. And you can't take pain and suffering from a person when you have medical expenses, because not only is it void against public policy, it's a constitutional deprivation under the 14th Amendment. I respectfully disagree. Other than sort of lip service as to the constitutional aspect, this brief was not, this matter was not briefed as a constitutional matter. I agree with you. I agree with you. I have a couple of questions. A couple of questions. Number one is, Gadskill, correct me if I'm wrong, but that pertains to the Physician's Lien Act, right? Yes. That's been rolled into the health care service. Right. And then also in Gadskill, we're talking about a minor or an individual who actually was already of a majority age. And the parents were trying to seek recovery because they still supported her, maintained her, and paid for her medicals, although she was already past the age of majority. Yes, that was not a case involving a minor. Right. Okay. But with regards to Cooper, we're talking about a settlement, an annuity settlement, and whether or not that annuity settlement that was structured could be attached. Could be broken up. Well, broken up, right. Could be broken up into segments, as with an annuity payment. And the Supreme Court says, no, you can't break it up. You've got to pay the whole thing. That was the specific issue that was presented in Cooper, but they did characterize the minor as a debtor who was obligated to pay the debt out of any proceeds that the minor recovered. The minor's recovery was for the personal injuries that she suffered at the hands of the defendants. It was settled. It doesn't matter if it's a settlement or a judgment. It doesn't matter. But here the parents are arguing that there is nothing to attach because the judgment that was entered was for pain and suffering from future and past and present and for scarring, but there was no recovery for medicals. Well, I think that argument misses the point that the medical bills, in this case, were stipulated by both parties as being reasonable and related. They stipulated as to the medical bills. But there was no award. That's what should have been appealed. There was a notice of appeal filed as to that matter. I know, but it never proceeded. But I don't think it's relevant what the trial courts – I don't think it's relevant that he denied her compensation for medical bills. The record shows that he denied it because she had no expectation of paying the bill. Well, I agree with you. But that's why they're arguing that Cooper is not applicable because, in Monago's case, there's nothing to attach. That's their argument. That's their argument, but, again, they stipulated to the reasonableness of these bills and the relatedness of these bills. And the statute says that if the bills are reasonable and related, then the lien attaches. So then why don't you pursue an action against the mother? An action against the mother would be one remedy. We could file a claim against the estate of a Kim Monago deceased, because he is deceased. That would be another remedy. The lien act provides us with a third remedy. And we are pursuing this remedy, and that is our choice as creditors to do that. The Enloe case, the argument that the appellee makes today is the same argument that the plaintiff made in Enloe. I'm a minor, and, therefore, my parents are responsible for my medical bills, so you can't get to my proceeds. Well, the 4th District rejected that approach because you have a lien statute with clear and mandatory language. The case against the mother or the parent is simply an alternative remedy. We are pursuing this remedy. The public policy behind this is to help out hospitals who treat nonpaying accident victims. And if you take minors out of the equation, then you're not promoting health care for the poor. You're taking a step back as to that. And that's why the legislature enacted this statute. What about the issue about intervention? That was addressed, as we all know, in the court's opinion. I think it was the Wendling case where the Supreme Court stated that the lien holder has no standing to intervene in the lawsuit of the plaintiff. We have no standing. And practically speaking, we at the state's attorney's office, to name one, we don't know that there's any settlement or trial going on until one of the attorneys notifies us that a judgment has been achieved or a settlement is imminent or has been agreed to. That's when we file the ‑‑ that's when we send over the notice of lien. Otherwise, we don't know what cases may or may not be going on. We don't know if there's a pre-litigation settlement. We have to rely on the attorneys to tell us. And, in fact, the statute requires the attorney to notify the lien holder. Well, doesn't Cooper also address that issue? I'm afraid to say I don't recall. The fact that the hospital lien holder has no standing to participate in a plaintiff's ‑‑ Maybe it was the Cooper case. I thought it was the Wendling case. But it was one of the Supreme Court cases in which the Supreme Court says that the lien holder has no standing. So when the trial judge in this case said, I didn't hear from you, state's attorney's office, we couldn't have intervened anyway because we don't have the authority ‑‑ we don't have the ability to do that. We don't have any standing to do that. That case is between the plaintiff and the defendant. We're simply a lien holder trying to get our bills paid. I must add, also, that in the area, in the matter of unjust enrichment, there is no unjust enrichment coming to us. We are simply trying to get our bills paid once and one time only. At most we'll get one recovery, and we're lucky to get that. There's no double recovery issue here as there is with the line of subrogation cases that are mentioned by the appellee. Going back to your argument with regards to the minor's cause of action for medical expenses, the plaintiffs cite the Reimers case and Beebe. But yet your brief doesn't discuss these cases. Do you think those, number one, were those cases correctly decided and are they distinguishable from this case? Respectfully, I believe that they are distinguishable because they don't involve the act. I believe the cases that involve the act are very clear. The clear cases that don't involve the act involve other law that is not applicable. The legislature has had 75 years to consider the issue of minors with respect to the Hospital Lien Act and the Health Care Services Lien Act. They have never seen fit to amend the statute. And so I would simply distinguish the cases on that basis, that they don't have anything to do with this act. I don't think that they are a supervening force that comes in and takes over the decision in this case. I simply, not in light of the two cases that involve minor plaintiffs, the Cooper case and the Enloe case, and the statute itself. That's all I'd have to say. One other question. Do you believe the county can seek recovery by lien against a plaintiff who obtained a judgment, even if the lien is unrelated to the injuries? We have treated the statute as requiring that the medical bills that we propound in favor of our lien have to be related to the injuries that the plaintiff asserted against the tortfeasor. That's how we've always dealt with it, and that's why we didn't brief the issue. But the act doesn't say that, does it? The current act doesn't contain that language. The previous act did contain that language. We treat the current act similarly to the predecessor, rightly or wrongly. We could be wrong. Under the act, if a stage four cancer victim was involved in a personal injury case and they went to the hospital and they were treated 95% for the cancer and 5% for the injury, you could collect your whole sum of money against a PI case. Well, we have not treated it that way. Well, I understand, but based on the wording of the statute. Based on the wording of the statute, and if it were interpreted that way, that could be what we do, but we've never done that. Because if that was done, that would be a violation of the Constitution. And we try not to violate the Constitution. I understand that. You swear to protect the Constitution. We never want to. No question about it. One other question regarding your brief. In your original brief, you mentioned that Mr. Monago was incarcerated. What's the relevancy of that as to the forcibility of the lien? That's something that I don't know why I put that in there, but I thought that there was something. There was an issue raised in my mind that perhaps there might be a sort of balancing of the equities, and I didn't want the court to go in that direction. He is now deceased. He has been murdered. That's a footnote, and whether that was inserted rightly or wrongly, I've done it. I simply did not want to make it appear that Mr. Monago was a saint who deserved proceeds simply because he was a minor. Okay, now for a very brief rebuttal. I know the court's heard promises like that before from lawyers. To answer your question, Justice Reyes, the lien, I checked, the lien was exerted after the first complaint was filed, before the amended complaint was filed. It was exerted well before the case went to trial. The bottom line here is that Mr. Monago did not sue for his medical bills. Whether he could or not, he did not sue for his medical bills. That means that the recovery he got, and you can tell it from the judge's opinion, was not for his medical bills, and yet they want to be paid for something that's not tied in to his medical care, and that's the basic problem underneath all of this. As to incentive, I did think in mind, a lien doesn't normally take everything away. Typically in cases, plaintiffs exert claims for medical bills because some of that money comes to their lawyer, which helps them get a lawyer, and some of the money would still come back to them because there's a cap on liens in large cases. And my final point, simply that Enloe, when it reached its decision, if you read it closely, relied wholly on wood rings, but it misread wood rings. There's not really much of an analysis in Enloe. They just said this has been decided in wood rings, and if you read wood rings, wood rings does not say that a minor is liable for his debts. It's just not in that case. You'd have to stretch it. Other than that, I thank the court for its attention. One more question regarding wood rings and Hammond and that line of cases. All of those cases, you agree, have to deal with subrogation. They do. They do. It's not specifically. On the other hand, the fact that the minor is not liable for his bills is not dicta in those cases. It's an inherent underpinning or underlying part of the reasoning of those courts in coming to their conclusions in the subrogation cases. So for that reason, we believe they're directly on point. And what is the relief that you're seeking here? In this instance, because the opinion has been published, we're looking for the opinion to be vacated, and that would leave the trial court's decision standing, which would mean that the county does not have a lien. If I've said that correctly, I believe that's the case, because as it stood before this court made its decision, the county did not have a lien. So we wanted to go back where that point was. That's all that would occur at this point. I just have one question based upon something you said, Mr. Rathstein. If the person who brings the suit decides not to sue for the hospital's recovery, the hospital has no way of ever getting their money back? The only answer I have to that is I think that's correct. I don't know. As I'm sitting there, I was trying to think from Justice Raddatz's question, like, well, what does happen? I guess what we have here is an incentive to actually look for the medical bills. Why would anybody want to go to a trial without putting the medical bills in evidence? That's legal malpractice if you represent a plaintiff. That's why in almost all of these cases there's an assignment by the parents to the minor to recover the medical bills, and everything is clear, and this case never would have been here. I don't know why that didn't happen here. If you read through years and years and years, it happens in every case. I don't know that I've ever seen a case where somebody went to trial and did not pursue his medical bills. I don't mean to be vehement, but I did personal injury work. I would never have done that. Unless the Court has further questions, we obviously appreciate the opportunity to address you. Thank you. Thank you, guys, for a very interesting case, and we'll take this case under advisement, and I hope the Supreme Court decides what we decide. Thank you.